UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SONNY DAVIS, | ) |
|         Plaintiff, | ) |
| v. | ) No. 1:25-cv-01423-SEB-KMB |
| LLOYD ARNOLD Commissioner, et al., | ) |
|         Defendants. | ) |

**Order Denying Motion for Preliminary Injunction**

In this action, Plaintiff Sonny Davis is proceeding with claims that Defendants – Lt. Leffler, Sgt. Carter, and Correctional Officer Auberry – violated his constitutional rights related to the exercise of his religion at Westville Correctional Facility ("Westville"). Dkts. 1, 7 (complaint and screening order). Mr. Davis has filed a motion for a preliminary injunction asking for five accommodations, namely for Indiana Department of Correction ("IDOC") 1) to provide Islamic inmates with separate diets that are not Kosher or which impose on them Jewish dietary restrictions and religious observances, 2) to allow Islamic inmates to observe 'White Nights' of fasting, 3) to provide prayer rings; 4) to provide scented prayer oil, and 5) to allow the Islamic community to worship together in one count letter. Dkt. 9. For the following reasons, Mr. Davis's motion, dkt. [9], is **denied.**

**I. Facts and Background**

Mr. Davis is incarcerated in a restrictive housing unit at Westville. Dkt. 22-1 at 1. Each complex at Westville holds their own religious services for the inmates who reside in each complex where appropriate. *Id.* Within Mr. Davis's restrictive housing unit, he can pray in his cell, and he can possess religious materials such as a Quran and prayer rug, and a facility chaplain makes

1

regular rounds to the housing unit. *Id.* at 1-2. Mr. Davis is also able to purchase food items, hygiene items, and religious items from the Westville commissary. *Id.* at 2.

Westville is certified to serve halal meals to incarcerated individuals. Dkt. 22-1 at 2. Mr. Davis can elect to receive a halal diet and not observe the Sabbath or Passover. *Id*. White Nights are not a required Islamic religious practice and occur during the middle days of each Islamic month. *Id.* at 2-3. Due to the differences in the calendars, these middle days would fall on different dates each month. *Id.* This would create the need for additional regular strategic planning and logistical challenges to the IDOC, which is currently serving three daily meals to approximately 28,000 incarcerated individuals. *Id*.

Islamic prayer rings are rings which instruct individuals on prayer times. Dkt. 22-1 at 3. Electronic devices such as prayer rings pose legitimate risks to the safety and security of IDOC facilities and the employees and inmates within. *Id.* Generally, inmates are permitted to possess non-electronic band rings. *Id*.

Inmates at Westville can purchase up to two ounces of prayer oil. Dkt. 22-1 at 3-4. Formerly, two scents of prayer oil were available, however, after an investigation determined that that the scented prayer oils tested positive for K2, IDOC made the decision that items which tested positive for illicit substances could not be permissibly available to inmates. *Id*. IDOC has tested 35 scented oils to attempt to make scented prayer oils available to inmates, but it must meet numerous standards including that it must not test positive for illicit drugs, be non-flammable, be in a clear plastic bottle and be transparent, not contain alcohol, and cannot mask the scents of contraband or other illicit substances. *Id*. A non-scented prayer oil is currently available for inmates to purchase until a suitable scented prayer oil is discovered. *Id*.

For safety and security purposes, most IDOC facilities do not allow incarcerated individuals to take items with them to recreation. *Id*. at 4. This is done for multiple reasons, including that recreation could supply certain individuals with the opportunity to traffic items through the facilities, as well as adding additional time-consuming duties for correctional staff who would be required to conduct more in-depth searches for individuals going to and returning from recreation to ensure that no items were being trafficked. *Id.*

Mr. Davis's previous facility, Correctional Industrial Facility ("CIF"), had divided Islamic religious services in two groups. Dkt. 22-1 at 2. This occurred for numerous reasons, including the congregation was growing to a size that made elements of the services difficult, including access to the prayer rug, safety and security concerns mixing individuals from certain housing units which contained individuals that were intentionally kept separate, safety and security concerns regarding the high number of Security Threat Group individuals that attended Islamic religious services, and to limit trafficking between housing units, conflict, and gang interactions. *Id.* Those split religious services occurred one after another. *Id.* Muslim inmates at CIF eventually had the opportunity to receive one hour of services on Monday and one hour of services on Friday. *Id. at 2*.

## II. Legal Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). The plaintiff first must show that "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). The plaintiff bears the burden of proving each element by a preponderance of the evidence. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the

plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id*.

"A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th Cir. 2020). The precise likelihood of success required depends in part on the balance of harms: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). "A preliminary injunction that would give the movant substantially all the relief he seeks is disfavored, and courts have imposed a higher burden on a movant in such cases." *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 826–27 (7th Cir. 1998).

### III. Discussion

Mr. Davis has not met his burden of showing he is entitled to the "extraordinary remedy" of a preliminary injunction. Defendants responded in opposition to Mr. Davis's motion, arguing that he is unlikely to succeed on any of his constitutional claims because he has not shown that he will face irreparable harm if his motion is denied. Dkt. 22 at 5. In support of this argument, the Defendants state that Mr. Davis's vague allegations that the denial of his religious requests would "deny [him] the ability to experience paradise" do not provide sufficient legal basis for irreparable harm. Dkt. 9 at 5. Further, they allege that Mr. Davis is able to access halal items, hygiene and religious items from commissary and possess religious items within his cell to practice his Islamic faith. *Id.* The Court agrees.

"[C]ourts must afford prison administrators wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir. 2020) (cleaned up). "Prison officials are uniquely qualified to decide where a particular prisoner should be housed, how to manage the staffing at each institution, and how to preserve safety and security at the institution. It is not this Court's job to second-guess those decisions." *Shaw v. Rozmarynoski*, 2025 WL 1869659, at *2 (E.D. Wis. June 4, 2025). As to Mr. Davis first requests for a prayer ring and scented prayer oil, the undisputed evidence indicates that Mr. Davis can access unscented prayer oil through commissary and possess non-electronic rings in his current IDOC facility. Further, IDOC made to decision to not offer items like scented prayer oil and electronic rings based on legitimate penological safety and security concerns. He has not shown that he will suffer irreparable harm by using these IDOC-approved alternatives to his preferred religious items.

With regard to Mr. Davis's requests to celebrate White Nights and congregate in one service, he has also not met his burden. His requests for a joint congregation seem to be specific to his previous facility, CIF, and Mr. Davis is now located at Westville. Further, the Defendants have designated numerous legitimate penological reasons why creating two separate services was necessary, namely safety and security concerns within the prison. Additionally, White Nights occur during the middle days of each Islamic month, which would create the need for additional regular strategic planning and logistical challenges to the IDOC due to the differences in calendars, which is currently serving three daily meals to approximately 28,000 incarcerated individuals. Dkt. 22-1 at 2-3. Additionally, Mr. Davis's current facility is certified for halal religious diets, and he can elect to receive a halal diet. Dkt. 22-1 at 2. Mr. Davis has not refuted any of these assertions in his response. And because IDOC has presented evidence that Mr. Davis will not be irreparably harmed

and does not have a likelihood of success on the merits, this Court cannot grant a motion for preliminary injunction.

Finally, traditional legal remedies of damages will be sufficient to compensate Mr. Davis for the deprivations he alleges that the Defendants caused him to endure. All in all, Mr. Davis has failed to prove by a preponderance of the evidence that he is entitled to injunctive relief in the form of an immediate transfer to another prison.

### III. Conclusion

Mr. Davis' motion for a preliminary injunction is **DENIED**. Dkt. [9].

**IT IS SO ORDERED.**

Date: 3/2/2026

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

SONNY DAVIS
128888
WESTVILLE – CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel